**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

EDDIE F. INGRAM,             )
    *Plaintiff*            )
                         )
vs.                       )      **Civil Action No. 3:17-cv-352-DPJ-FKB**
                         )
GSI SERVICES, LLC d/b/a EMERALD  )
TRANSFORMER,            )
    *Defendant*           )

---

## MEMORANDUM OF AUTHORITIES SUPPORTING
## MOTION FOR SUMMARY JUDGMENT

---

The Defendant, GSI Services, LLC ("GSI") files this Memorandum of Authorities Supporting Motion for Summary Judgment, and would show as follows:

### INTRODUCTION

In May 2016, GSI terminated Eddie Ingram's employment at the conclusion of more than a year and half of workers' compensation proceedings, where Ingram received a settlement based upon his representation to the Mississippi Workers' Compensation Commission that he would be at least partially, permanently disabled. GSI relied upon those representations and made the proper decision that it had no available job that Ingram could perform under his work restrictions. GSI did not discriminate against Ingram on the basis of either disability or age.

### PROCEDURAL BACKGROUND

Ingram filed his charge of discrimination in the EEOC on June 22, 2016. He alleged discrimination under the Americans with Disabilities Act and the Age Discrimination in Employment Act. GSI filed its response on August 9, 2016, where it substantively denied the charges and set forth a full explanation of the facts surrounding this case. On September 15, 2016, Ingram, through counsel, filed a reply supporting the Charge. The EEOC issued its Notice

of Right to Sue on February 13, 2017.  The parties unsuccessfully mediated the case on April 19,

2017.  On May 11, 2017, Plaintiff filed suit in the United States District Court for the Southern

District of Mississippi, Northern Division.

Ingram alleges that GSI discriminated against him based upon a disability, specifically

based upon his physical condition after a workplace injury.  The crux of his ADA claim is that

GSI failed to provide him with reasonable accommodation.[1]  He also alleges disability

retaliation, but that claim should be summarily dismissed because Ingram never alleged

retaliation in his EEOC Charge.[2]  Ingram also alleged that he was terminated on the basis of age

discrimination.  He alleged only a claim of comparator age discrimination (*i.e.* that GSI replaced

Ingram with a younger worker).  Summary Judgment is appropriate on each of Ingram's claims.

## UNDISPUTED MATERIAL FACTS

a. **Garrett & Sons, Inc.**

GSI Services, LLC was formed in the wake of an asset purchase agreement by Versatile

Processing Group d/b/a Emerald Transformer of Garrett & Son, Inc.,[3] a closely held Mississippi

corporation.  Garrett & Son was by any standard a "mom and pop operation."  The company

started in Greenwood, Mississippi but ultimately moved its plant to Madison County, in

Gluckstadt.[4]  In approximately 1995, Herb Phillips hired and mentored Eddie Ingram at Garrett

& Son, Inc., a small, family-run Mississippi company specializing in servicing electrical power

equipment.[5]  Ingram was born in 1952, so he was in his mid-forties when Garrett & Son hired

---

[1] [Doc. 1] at ¶ 22.
[2] *See* **Exhibit "A"**, EEOC Charge.
[3] For clarity of reference, this brief will reference the defendant in this civil action as "GSI" and Garrett & Son, Inc. as "Garrett & Son."
[4] **Exhibit "B,"** – Excerpts from Deposition of Jason Peacock at 8:14-15.  For reference, when citing deposition testimony, this brief will do so by the page number, colon, and the line numbers.  This would be at page 8 of Mr. Peacock's deposition, lines 14 through 15.
[5] **Exhibit "C,"** – Excerpts from Deposition of Eddie Ingram, at 12:11-25.

him.[6]  Ingram reported directly to Phillips.[7]  He essentially ran the regulator department at Garrett & Son after Herb Phillips left.[8]  Garrett & Son was a small company where employees never had specific job titles.  Everyone did a little bit of everything.[9]

Ingram worked as a repair/recloser technician and primarily worked repairing regulators.[10]  The regulators he serviced varied in size.  The units were between 6 and 8 feet tall and 3 feet wide.[11]  The functions of Ingram's jobs required him to take apart and move around various components of a regulator or transmission.  It would also require him to routinely move these units with the help of various tools.  None of this is in dispute.

Ingram and any other worker performing similar tasks used the aid of multiple tools, including pallet jacks, chain hoists, and forklifts.  Ingram did not – and was not expected – to lift thousands of pounds' worth of equipment manually.  But the work he would perform in any given shift would require him to be on his feet all day long and to exert substantial physical efforts.[12]  The extent of exertion necessary is a disputed matter, but that dispute is not material for purposes of this motion.

**b.     Ingram's work history.**

Eddie Ingram was a good worker and employee.  He worked at the Garrett & Son plant in Gluckstadt for nearly two decades.  During that time, he rose to become the highest paid employee not in executive leadership.[13]  Because Garrett & Son was a small operation, all of its

---

[6] **Exhibit "C"** at 16:4.
[7] **Exhibit "C"** at 23:15-18.
[8] **Exhibit "C"** at 24:2-21.
[9] **Exhibit "B"** at 13:23-25; 14:1-5.
[10] Complaint, [Doc. 1] at ¶ 4.
[11] **Exhibit "C"** at 42:20-24.
[12] **Exhibit "C"** at 66:24.
[13] **Exhibit "C"** at 125:13.

employees had to assist others in performing the essential functions of his or her job.[14]  Ingram

worked as a repair and recloser technician.  His job was to work on regulators and transformers

of all sizes.  As he testified, "[a] picture is worth 1,000 words."[15]  Below is a regulator:



Ingram testified that the physical requirements of his job included:

* Climbing depending on size of Regulator[16]
* Pushing using hydraulics and little exertion[17]
* Standing all day[18]
* Hearing[19]
* Walking[20]
* Reaching [21]
* Feeling[22]
* Balancing[23]
* Pulling[24]
* Stooping[25]
* Crouching & Kneeling [26]

[14] **Exhibit "B"** at 15:3-6.
[15] **Exhibit "C"** at 43:10.
[16] **Exhibit "C"** at 65:10-25
[17] **Exhibit "C"** at 66:6-22
[18] **Exhibit "C"** at 66:23-24
[19] **Exhibit "C"** at 67:17-18
[20] **Exhibit "C"** at 67:21-22
[21] **Exhibit "C"** at 67:23-24
[22] **Exhibit "C"** at 68:17-18
[23] **Exhibit "C"** at 69:6-7
[24] **Exhibit "C"** at 69:8-12
[25] **Exhibit "C"** at 74:10-11

- Lifting no more than 10 lbs alone[27]
- Gives example of some of his work as being the one that would have to fix a chain hoist that would stop operating by standing on a pallet and being lifted by a forklift to the chain hoist to make the repairs[28]]

In terms of pushing, Ingram testified that he had to jack up regulator tank out of the pit in the ground and push it around the plant floor using a pallet jack (which is essentially an industrial-scale dolly).[29]  Ingram described the "leaning" he would have to do: "Picture the regulator is out of the tank, and I'm reaching in there with my own meter to check different leads for voltage, so I would be leaning in and doing that."[30]  He went on, "So I would undo these, undo those two leads, swing my chain hoist over, hook my chain to the top of it and then raise it, swing it up, swing it out, swing it over to my table and lower the chain hoist."[31]  Ingram was on his feet performing these tasks from 7:00 a.m. until roughly 3:30 p.m.[32]

**c.       The merger.**

In July 2014, Versatile Processing Group, Inc. doing business as "Emerald Transformer" purchased Garrett & Son.  The company began operating as GSI Services, LLC, a Delaware limited liability company.  One of GSI's competitors before the merger was a company called 4Way Electric in Greenwood.  Emerald purchased 4Way and began merging the two companies' operations.

There were reductions in the GSI workforce that came with the merger.[33]  Approximately 30 people were laid off from both the Gluckstadt and Greenwood facilities.[34]  Eventually, both

---

[26] **Exhibit "C"** at 74:13-16
[27] **Exhibit "C"** at 77:17-19
[28] **Exhibit "C"** at 141:14-21
[29] **Exhibit "C"** at 66:8-18.
[30] **Exhibit "C"** at 68:1-4.
[31] **Exhibit "C"** at 68:11-14.
[32] **Exhibit "C"** at 67:2-9.
[33] **Exhibit "D,"** – Excerpts from Deposition of Meredith Allred, at 53:3-8.

the Greenwood and Gluckstadt facilities were shuttered, and Emerald now performs its work out of a facility in Lexington, Mississippi.[35]

### d.    The workplace injury and workers' compensation proceedings.

On November 20, 2014, Ingram was moving a very heavy piece of equipment on a pallet jack.[36]  He was moving it through a doorway and had to be precise in order to fit it through.[37] His hand was on the top of the piece of equipment and he was on its left side.[38]  His coworker pushed the equipment, and his left hand was caught between the wall and the heavy equipment.[39] Ingram's whole left hand was crushed between the metal bin and piece of equipment, and using his right arm, he attempted to yank his hand from being caught.[40]  Jason Peacock immediately drove Ingram from the plant to receive medical treatment.[41]

Ultimately, Ingram filed a petition to controvert with the Mississippi Workers' Compensation Commission.  From 2014 through May 2015, GSI continued to pay Ingram's salary.[42] After that, all payments "from" GSI were benefits paid by its workers' compensation carrier.  Through May 2016, Ingram received payments from GSI's workers' compensation carrier for his medical bills and for partial, temporary disability.[43]  In December 2015, Ingram underwent a functional capacity examination with Dr. Michael Winkelmann.[44]  Dr. Winkelmann concluded that, as of October 27, 2015, Ingram had reached medical maximum improvement

---

[34] **Exhibit "D"** at 55:20-25.
[35] **Exhibit "D"** at 31:21-25; 32:1-3.
[36] **Exhibit "C"** at 92:18-25.
[37] **Exhibit "C"** at 93:1-5.
[38] **Exhibit "C"** at 93:18-20.
[39] **Exhibit "C"** at 94:2-7.
[40] **Exhibit "C"** at 95:21-25.
[41] **Exhibit "C"** at 98:91-25.
[42] **Exhibit "D"** at 103:18-25.
[43] **Exhibit "E"** – Sworn Petition to Settle Workers' Compensation Claim and attachments.
[44] **Exhibit "E."**

with an 8% impairment to his left hand and a 3% impairment to his right upper extremity.[45]   The FCE revealed that Ingram could return to work with a 25-pound overhead lifting restriction and a 45-pound carrying restriction.[46]   The FCE revealed that Ingram had a push-static of 59 pounds and a pull static of 74 pounds.   These restrictions are far less than the requirements of his job with GSI.   **Dr. Winkelmann concluded that, "[t]here is not a job match to his pre-injury job description.**"   Finally, "[t]his client would do well to limit elevated work **and forward bending work to occasionally**."[47]

In May 2016, Ingram executed a verified petition to approve settlement in his workers' compensation case.   The sworn petition represented that he had some permanent disability, but that he would be able to return to work under the restrictions set forth by Dr. Winkelmann.   After reviewing the work restrictions, GSI determined that Ingram could not perform the essential functions of his former job, with or without reasonable accommodation.   GSI sought additional work that Ingram might have been able to do, but could not find any.   Other job descriptions at GSI include:   decommission laborer, painter, shipping/receiving supervisor, and field decommission technician.

As to the alternate positions at GSI, none would be able to accommodate Ingram's work restrictions.   A repair support technician would frequently exceed the bending and lifting restrictions.   All repair technicians must also pull on conveyors and/or pallet jacks.   A decommission technician would frequently exceed **all** limitations noted in the FCE.   All decommission techs must also pull on conveyors and/or pallet jacks.   A painter would frequently exceed the waist to crown, overhead, and forward bending restrictions.   All painters must also pull/push pallet jacks and use their paint guns overhead.   The lifting requirements for a painter

---

[45] **Exhibit "E."**
[46] **Exhibit "E."**
[47] **Exhibit "E."**

would be occasionally exceeded.  A welder would frequently exceed the forward bending work restriction and would occasionally exceed the static lift restrictions.  Regardless, Ingram is not a licensed welder capable of legally performing that job at all.[48]

## LEGAL STANDARD

To avoid summary judgment, Mr. Ingram must produce evidence of specific facts that demonstrate that a genuine issue of material fact exists. *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323-324 (1986).  "The once frequently repeated characterization of summary judgment as a disfavored procedural shortcut no longer appertains.  Summary judgment is appropriate where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant, or where it is so overwhelming that it mandates judgment in favor of the movant."  *Armstrong* v. *City of Dallas*, 997 F.2d 62, 66-67 (5th Cir. 1993).  *See also Alton* v. *Texas A&M University*, 168 F.3d 196, 199 (5th Cir. 1999) (same).  Mr. Ingram may not defeat it by pointing to "conclusory allegations," "a scintilla of evidence," or "some metaphysical doubt as to the material facts."  *Little* v. *Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Likewise, "[h]earsay evidence inadmissible at trial cannot be used to create a genuine issue of material fact to avoid summary judgment."  *Harris* v. *Pontotoc Co. Sch. Dist.*, 635 F.3d 685, 692 (5th Cir. 2011).

Mr. Ingram "can prove disparate treatment" under the ADA either by (1) direct evidence that a workplace policy, practice, or decision relies expressly upon a protected characteristic, or (2) indirect evidence, by using the burden-shifting framework set forth in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973).  *See, e.g. EEOC* v. *LHC Group, Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).  "Direct evidence is evidence which, if believed, proves [disparate treatment] without inference or presumption."  *Jones* v. *Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th

---

[48] **Exhibit "F,"** – Excerpts from GSI's Sworn Responses to Interrogatories, at Interrogatory No. 8.

Cir. 2005).  There is no direct evidence of prohibited discrimination against Mr. Ingram in the record.

Under the Age Discrimination in Employment Act ("ADEA"), it is, "unlawful for an employer… to discharge any individual…because such individual's age."  29 U.S.C. § 623(a)(1). Ingram's charge does not allege any direct evidence of intentional discrimination (which he would presumably do if he had any such evidence for the administrative process to work effectively), so he must meet his burden circumstantially.  To do so, he must prove, "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age."  *Armendariz* v. *Pinkerton Tobacco Co.*, 58 F.3d 144, 149 (5th Cir. 1995).  Ingram is within the protected class under the ADEA, because he was "at least 40 years of age" at the time he was terminated.  29 U.S.C. § 631(a).  "If a plaintiff demonstrates that age was a motivating factor in the employment decision, it then falls to the defendant to prove 'that the same adverse employment decision would have been made regardless of discriminatory animus. If the employer fails to carry this burden, plaintiff prevails.'"  *Rachid* v. *Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

## <u>ARGUMENT</u>

I.     **Eddie Ingram is judicially estopped from asserting that he was or is capable of performing the essential functions of his job at GSI with or without reasonable accommodation.**

Ingram cannot disclaim the fact that, at the time of his termination, he was unable to perform under the work restrictions presented in his workers' compensation settlement.  Ingram presented a sworn petition to the Mississippi Workers' Compensation Commission stating that he was disabled sufficiently to settle his workers' compensation claim with GSI.  The workers'

compensation commission accepted that position and approved Ingram's settlement. Almost immediately after that settlement was approved, Ingram filed his charge of discrimination with the EEOC alleging that he was able to fully perform the functions of his job at GSI.

Judicial estoppel is "a common law doctrine that 'prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.'" *Everett* v. *Nat'l Union Fire Ins. Co. of Pittsburg, P.A.*, 857 F. Supp. 2d 611, 613 (S.D. Miss. 2012) (citing *Hall* v. *GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (quoting *Ergo Science, Inc.* v. *Martin*, 73 F.3d 595, 598 (5th Cir. 1996)). Its purpose is to "protect the integrity of the courts—preventing a litigant from contradicting its previous, inconsistent position when a court has adopted and relied on it." *Ahrens* v. *Perot Systems Corp.*, 205 F.3d 831, 833 (5th Cir. 2000) (quoting *Afram Carriers, Inc.* v. *Moeykens,* 145 F.3d 298, 303 (5th Cir.1998). The doctrine applies to bar pursuit of a claim if the following two elements are satisfied: (1) the position of the party to be estopped is "clearly inconsistent with its previous one"; and (2) the party "must have convinced the court to accept that previous position." *Everett,* 857 F. Supp. 2d at 613 (citing *Hall*, 327 F.3d at 396).

Ingram was injured in November 2014. He crushed his left hand, requiring two reconstructive surgeries to repair nerve damage.[49] Immediately after the transformer unit crushed his left hand, Ingram violently pulled the hand with his right arm, injuring his right shoulder.[50] Ingram filed a petition to controvert in the Mississippi Workers' Compensation Commission. GSI's workers' compensation carrier, AIG, paid benefits to Ingram for his disability and also paid for his medical bills, including the two surgeries.

---

[49] **Exhibit "E."**
[50] **Exhibit "C"** at 96:20-25.

51248381_1                                -10-

On May 3, 2016, Ingram filed a sworn petition to the commission to approve a settlement of $100,000.00 for his workers' compensation claims.  He attached to that petition certain medical records and opinions, including those of Dr. Michael Winkelmann and Dr. Angela Cason, a physical therapist.  Dr. Winkelmann stated that Ingram had reached maximum medical improvement and was permanently, partially disabled.  According to Dr. Winkelmann, Ingram was restricted by a 25 pound overhead limit, and 45 pound carrying limit.[51]  By including those as the basis for his settlement, Ingram explicitly agreed with those findings.  Ingram swore that he had, "some degree of permanent disability as a result of his injuries…"[52]  And the Mississippi Workers' Compensation Commission accepted those findings.  It approved the $100,000.00 settlement.[53]

Both elements of judicial estoppel are present and bar Ingram's ADA claim as a matter of law.  In order to get a payment for his work-related injury, Ingram represented that he was permanently disabled and could only work under the restrictions Dr. Winkelmann prescribed.  The fact that the representation was made to an administrative agency is of no concern.  *See Everett*, 857 F. Supp. 2d at 616 (holding that "the [Mississippi Workers' Compensation Commission's] approval of plaintiff's workers' compensation settlement with J.B. Hunt and its workers' compensation carrier satisfies the judicial acceptance requirement.")

The Court's holding in *Cleveland* v. *Policy Mgmt. Sys. Corp.* is instructive.  In *Cleveland*, the Supreme Court held that to survive summary judgment, an ADA Plaintiff, "must explain why that [an SSDI] contention is consistent with her ADA claim that she could 'perform the essential functions' of her previous job, at least with 'reasonable accommodation.'"  526 U.S. 795, 798 (1999).  Obviously, a claim for workers' compensation benefits is not the same as a claim for

---

[51] **Exhibit "E"** at ¶ 2.
[52] **Exhibit "E"** at ¶ 3.
[53] **Exhibit "G,"** – Order from Mississippi Workers' Compensation Commission approving settlement.

social security disability, but, "*Cleveland* applies in contexts beyond Social Security disability benefits…" *EEOC* v. *Vicksburg Healthcare, LLC*, 663 F. App'x 331, 333 (5th Cir. 2016).

The *Cleveland* Court recognized that where the Plaintiff makes a "sworn assertion" in applying for disability benefits that he is unable to work even with accommodations such a claim may conflict with an ADA claim. *Cleveland*, 526 U.S. at 806. The procedure outlined by the Court requires a Plaintiff to "proffer a sufficient explanation" of the apparent contradiction between the sworn assertions. *Id.* The Court also noted that a Plaintiff cannot create a genuine issue of material fact by simply contradicting his previous sworn statements. Instead, the explanation of the inconsistency must be sufficient to "warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff nonetheless could perform the essential functions of the job, with or without a reasonable accommodation." *Id.* at 807. Here, Ingram represented to the Mississippi Workers' Compensation Commission that he was incapable of performing his job without the restrictions given by Dr. Winkelmann and Dr. Cason. He also cannot explain why that representation is consistent with an ADA claim.

Ingram submitted with his sworn workers' comp petition the report of Dr. Cason and Dr. Winkelmann. In the section of her report entitled "Physical Return to Work Options Explored," Dr. Cason noted that, "[t]he physical requirements of [Ingram's] job have been compared to the client's performance in the FCE. **There is not a job match to his pre-injury job description.**" In a section entitled, "Therapist's Recommendation Regarding Return to Work," Dr. Cason stated that, "[p]hysical abilities do not match job requirements. Recommend job modifications or alternative placement."[54]

---

[54] **Exhibit "E."**

At the time this report was issued, Ingram was litigating the amount of disability benefits he was going to receive.  In defending the comp claim, GSI had every incentive in the world to get Ingram back to work and mitigate its ultimate payments/damages.  Conversely, it had no motive at this point in pretextualizing the job requirements, as Ingram alleged in his Complaint.  The unexplainable fact is that Ingram – seeking to maximize his recovery in the workers' compensation proceeding – represented to the Commission that he was disabled and could not perform the essential functions of his job.  The Commission accepted that position and approved settlement in the amount of $100,000.00.  Judicial estoppel prevents Ingram from "changing horses" midstream.

## II.     Ingram cannot meet his evidentiary burden of demonstrating violation of the ADA

In addition to the judicial estoppel argument, Ingram's claim also fails because he has not offered sufficient direct evidence to establish the elements of a failure-to-accommodate claim.  The ADA prohibits discrimination against a qualified individual on the basis of his disability, which includes failing to reasonably accommodate the physical limitations of an otherwise qualified individual. *Griffin* v. *UPS, Inc.*, 661 F.3d 216, 221-22 (5th Cir. 2011).  "To establish a claim for failure to accommodate, a plaintiff must show that: (1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to reasonably accommodate the disability." *Cortez* v. *Raytheon Co*., 663 F. Supp. 2d 514, 524 (N.D. Tex. 2009).  Ingram cannot satisfy these elements.  He has not offered any direct evidence that he was a qualified individual or that GSI did not offer him reasonable accommodation.  "Direct evidence is evidence which, if believed, proves the fact without inference or presumption." *Brown* v. *E. Mississippi Elec. Power Ass'n*, 989 F. 2d 858, 861 (5th Cir. 1993).

GSI terminated Ingram because he could not perform the essential functions of his former job under his work restriction and not *because of* a disability.

> a.      At the time of his termination, Ingram was not a "qualified individual."

To succeed on a failure-to-accommodate claim, a Plaintiff such as Ingram must prove that he was a "qualified individual," which requires him to demonstrate that he was, "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The relevant timeframe for this is if Ingram was a qualified individual at the time that the adverse employment action was taken. *See, e.g. Amsel* v. *Tex. Water Dev. Bd.*, 464 F. App'x 395, 400 (5th Cir. 2012) ("Amsel focuses on his qualifications during his overall tenure. However, the question here is whether he was qualified at the time his position was eliminated."); *EEOC* v. *Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 379 (4th Cir. 2000) ("[T]he date of an adverse employment decision is the relevant date for determining whether a plaintiff is a 'qualified individual with a disability.'"); *Sever* v. *Henderson*, 381 F. Supp. 2d 405, 414 (M.D. Pa. 2005).

As in *Amsel*, GSI was undergoing a substantial reorganization of its corporate structure at the time Ingram was terminated. By the time Ingram was terminated in May 2016, Ingram had not performed his full duties as a regulator repair technician since his injury in November 2014, or nearly 18 months. GSI would not have violated the ADA if it had terminated Ingram long before that period, because "[n]othing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect." *Rogers* v. *Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996). Instead, it reasonably allowed Ingram the time to heal and, upon learning that he would have what Ingram

himself represented as permanent work restrictions less than the essential requirements of Ingram's former job, GSI made the decision to terminate Ingram.

At the time GSI terminated Ingram, Ingram represented to the Mississippi Workers' Compensation Commission that he was at maximum medical improvement and that he was under certain physical restrictions. Those physical restrictions were necessary to the job. And GSI was under no legal burden to modify the essential functions of the job or displace another worker. *See Toronka* v. *Cont'l Airlines, Inc.*, 411 F. App'x 719, 724 (5th Cir. 2011) ("It would not be a reasonable accommodation to require the employer to eliminate essential job functions, modify job duties, reassign existing employees, or hire new employees…") Moreover, Ingram testified that he never reapplied for his former job with GSI or had any direct communication with GSI since his termination.[55]

> ### b. There is no direct evidence of prohibited discrimination against Mr. Ingram by GSI under the ADA.

"To qualify as direct evidence of discrimination" in the Fifth Circuit under either ADA or Title VII, alleged statements must be 1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the adverse employment action; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue. *Rodriguez* v. *Eli Lilly & Co.*, 820 F.3d 759, 764-765 (5th Cir. 2016); *see also Reed* v. *Neopost U.S., Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) (noting that Fifth Circuit applies the fourpart test to comments presented as direct evidence of discrimination in "federal discrimination claims"). GSI merely relied upon the documentation Ingram himself

---

[55] **Exhibit "C"** at 151:6-12 ("**Q:** After you were terminated – or after you knew you were terminated, you never tried to get your job back, did you? **A:** No. **Q:** So you don't know that they wouldn't have hired you back because you never applied for the job again? **A:** That's true.")

provided to the Mississippi Workers' Compensation Commission that he was unable to perform the tasks of his demanding job.

Ingram was released under "light work" restrictions at the conclusion of his workers' compensation proceedings.  His records indicated that the job requirements provided by GSI demonstrated that his job requirements constituted "medium work."   The Social Security Administration promulgated rules governing levels of work.  It defines "medium work" as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).  Dr. Cason also noted that, based upon Ingram's performance in his FCE, he was incapable of performing the duties of his former job without some modification of the duties or reassignment.  GSI only complied with the records provided to it by Ingram himself.  It did not discriminate against him.

### c.      Mr. Ingram cannot demonstrate prohibited discrimination by GSI under the ADA with circumstantial evidence.

To make out a prima facie case of discrimination under the ADA, Mr. Ingram must show that (1) he is disabled, has a record of having a disability, or is regarded as disabled; (2) he is qualified for his job; (3) he was subjected to an adverse employment action on account of his disability or the perception of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees. *See McInnis* v. *Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000).  Assuming, for the sake of argument, that Ingram could create a triable issue of fact on the first four elements, his claim still fails because he cannot provide any evidence sufficient to establish that he was replaced by or treated less favorably than a non-disabled comparator.

To establish his *prima facie* ADA case, Mr. Ingram must show that "he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances."

*Lee* v. *Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).   In *Lee*, the Fifth Circuit stressed that circumstances must match in multiple ways in order to qualify as "identical."   574 F.3d at 259-60.   As noted above, the plant where Ingram worked is no longer in operation.   The once "mom and pop shop" operating as Garrett & Son became GSI Services, LLC and consolidated two separate entities.   Since that time, the company has laid off roughly 30 employees.   Notably, GSI never replaced Ingram with another worker.   Therefore, Ingram cannot circumstantially prove discrimination.

### d.   All retaliation claims should be dismissed with prejudice because Ingram never exhausted those claims.

It is well-settled that certain procedural and administrative requirements must be satisfied before a plaintiff may seek relief in the courts for causes of action based on unlawful employment practices.   42 U.S.C. § 2000e-5(a); *see McClain v. Lufkin Indus., Inc.,* 519 F.3d 264, 273 (5th Cir. 2008).   By statute, the Equal Employment Opportunity Commission ("EEOC") has sole enforcement authority to entertain claims pertaining to unlawful employment discrimination on the basis of race, color, religion, sex, national origin, disability, or any allegations dealing with retaliation for the exercise of rights related thereto.   42 U.S.C. § 2000e-5(a).   In particular, a plaintiff asserting employment discrimination under Title VII must file an EEOC Charge within 180 days of the allegedly unlawful employment practice.   *Id.* § 2000e-5(e)(1).   Should the EEOC issue a Dismissal and Notice of Rights – colloquially referred to as the "right-to-sue letter" – a plaintiff must then file suit within ninety days of receipt of the Notice or forfeit his rights as to those charges.   *Id.* § 2000e-5(f)(1).

In this case, Plaintiff has failed altogether to file a charge with the EEOC as to any alleged discrimination based on retaliation.   The only Charge of Discrimination Plaintiff filed

with the EEOC in this matter lists "disability" and "age" as its bases.[56]  The relevant portion of

the Charge narrative reads as follows:

> I was denied the opportunity to return to work.  I learned May 2016 through the
> Mississippi Department of Employment Security that I was terminated due to my
> employer's refusal to accommodate my restrictions…I believe I was
> discriminated against become of my disability in violation of the Americans with
> Disabilities Amendments Act of 2008 and the Age Discrimination in Employment
> Act of 1967, as amended since: A. I could have performed my job duties had I
> been allowed to return to work.  Upon belief, my returning to work would not
> have been an undue hardship.  B. I was the oldest employee in a skilled technical
> position working for the company at the location where I worked.  I also believe
> my age was a factor in not being allowed to return to work.[57]

Nowhere in his Charge does Plaintiff mention retaliation.  Perhaps more importantly, the

EEOC did not, in fact, investigate any such claims.  The Fifth Circuit has made clear that the

"scope of a Title VII complaint is limited to the scope of the EEOC investigation which can

reasonably be expected to grow out of the charge of discrimination."  *Thomas* v. *Texas Dep't of

Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000).  In determining whether a plaintiff has

exhausted his administrative remedies, a court should look to the statement given by the plaintiff

in the administrative charge, and "look slightly beyond its four corners to its substance rather

than its label."  *Femidaramola* v. *Lextron Corp.*, 2006 WL 2669065 *4 (S.D. Miss. Sept. 18,

2006) (citing *Pacheco* v. *Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006)).  In *Femidaramola*, this

Court ruled the plaintiff failed to exhaust administrative remedies with respect to his retaliation

claim because "there [was] nothing in his EEOC charge that would reasonably have been

expected to trigger a retaliation investigation. . . . Simply put, the *substance* of Plaintiff's EEOC

filings does not set forth any facts that would suggest an instance of retaliation."  *Id.* at *5

(emphasis in original).  Ingram never charged retaliation in the EEOC, and any claim allegedly

founded upon retaliation fails as a matter of law.

---

[56] **Exhibit "A."**
[57] **Exhibit "A."**

### III.     Ingram cannot establish his ADEA claim.

Under the Age Discrimination in Employment Act ("ADEA"), it is, "unlawful for an employer… to discharge any individual…because such individual's age." 29 U.S.C. § 623(a)(1). Ingram's charge does not allege any direct evidence of intentional discrimination (which he would presumably do if he had any such evidence for the administrative process to work effectively), so he must meet his burden circumstantially.   To do so, he must prove, "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age." *Armendariz* v. *Pinkerton Tobacco Co.*, 58 F.3d 144, 149 (5th Cir. 1995).

Ingram is within the protected class under the ADEA, because he was "at least 40 years of age" at the time he was terminated.  29 U.S.C. § 631(a).  "If a plaintiff demonstrates that age was a motivating factor in the employment decision, it then falls to the defendant to prove 'that the same adverse employment decision would have been made regardless of discriminatory animus. If the employer fails to carry this burden, plaintiff prevails.'" *Rachid* v. *Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).  Ingram's claim of age discrimination fails because he cannot even establish a *prima facie* case.  GSI did not replace Ingram with a younger worker. Indeed, the unchallenged evidence is that GSI never replaced Ingram with ***any*** other worker.[58]

### CONCLUSION

GSI terminated Eddie Ingram's employment based upon Ingram's own assertions that he could not perform the functions of his physically-demanding job.   Ingram made those representations in the course of a proceeding where it was necessary for him to do so in order to receive a higher payout.   He did so, the Mississippi Workers' Compensation Commission

---

[58] **Exhibit "F"** at Interrogatory No. 12.

approved his settlement, and he was paid $100,000.00.  He now seeks to contradict the sworn testimony given to the Mississippi Workers' Compensation Commission by stating that he could, at the time of his termination, perform the functions of his job.  The doctrine of judicial estoppel negates an essential element of Ingram's disability claim, because he cannot without contradiction maintain that he was a "qualified individual."  Nor does Ingram have any admissible evidence to demonstrate that GSI discriminated against him based upon his disability.  Indeed, he does not believe that he has a disability.  Finally, Ingram cannot meet his summary judgment burden of establishing age discrimination.  His complaint alleged circumstantial evidence of age discrimination, but he cannot demonstrate that GSI replaced him with a younger worker.  In sum, the Court should find that there are no genuine issues of material fact and GSI is entitled to judgment as a matter of law.

Dated: May 9, 2018.                                          Respectfully submitted,

                                                             **GSI SERVICES LLC d/b/a EMERALD TRANSFORMER**

                                            By:     *s/ H. Richard Davis, Jr.*
                                                    R. Jarrad Garner (MSB# 99584)
                                                    H. Richard Davis, Jr. (MSB# 103983)
                                                    Adams and Reese, LLP
                                                    1018 Highland Colony Parkway, Suite 800
                                                    Ridgeland, Mississippi 39157
                                                    Office: (601) 353-3234
                                                    Fax:    (601) 355-7908
                                                    jarrad.garner@arlaw.com
                                                    richard.davis@arlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, H. Richard Davis, one of the attorneys for the Defendant, do hereby certify that I have, this day, filed the foregoing with the Clerk of Court via the CM/ECF system, which has caused a true and correct copy to be served on all counsel of record.

Dated: May 9, 2018.

*s/H. Richard Davis, Jr.*
H. Richard Davis, Jr.
